*Stacey v. Comm'r of Social Security*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 7th day of January, two thousand twenty.

PRESENT:
> ROBERT A. KATZMANN,
> *Chief Judge*,
> GUIDO CALABRESI,
> RAYMOND J. LOHIER, JR.,
> *Circuit Judges*.

---

ALBERT A. STACEY, II,

> *Plaintiff-Appellant*,

> v.                                                      No. 19-108

COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION,

> *Defendant-Appellee*.

---

| | |
|---|---|
| For Plaintiff-Appellant: | CAROLYN A. KUBITSCHEK, Lansner & Kubitschek, New York, NY. |
| For Defendant-Appellee: | REBECCA ESTELLE, Special Assistant United States Attorney (Ellen E. Sovern, Regional Chief Counsel, Office of the General Counsel, |

1

Social Security Administration, *on the brief*), *for* Christina E. Nolan, United States Attorney for the District of Vermont.

Appeal from a judgment entered on November 15, 2018 in the United States District Court for the District of Vermont (Conroy, *M.J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **REVERSED AND REMANDED**.

Plaintiff-appellant Albert A. Stacey, II appeals the denial of his application for Disability Insurance Benefits and Supplemental Security Income. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

Stacey worked as a truck driver for several years before suffering a debilitating injury. He now has several serious physical impairments, including leg and back pain and limited mobility. In addition, Stacey suffers from depression, anxiety, mood disorder, posttraumatic stress disorder, and attention deficit hyperactivity disorder. He has difficulty controlling his temper and concentrating on tasks for an extended period.

In February 2015, Stacey applied for Social Security Disability Insurance Benefits and Supplemental Security Income. Following a hearing, the Administrative Law Judge ("ALJ") concluded that Stacey was capable of performing light, simple work that did not require intense or frequent social interaction. In doing so, the ALJ credited the opinions of two non-examining state agency psychologists, Drs. Howard Goldberg and Joseph Patalano, that Stacey can sustain concentration for two-hour periods. The ALJ declined to credit the opinion of Abigail Tobias, Stacey's treating psychologist since 2010, that Stacey would be "off-task" for more than 15% of the workday. Based on testimony from a vocational expert, the ALJ found that there exist jobs in significant numbers in the national economy that Stacey could perform. The ALJ therefore concluded that Stacey is not disabled and declined to award benefits. The Appeals Council

2

adopted the ALJ's ruling as the final determination of the Commissioner. Stacey filed an action

seeking review in the district court, which affirmed the Commissioner's decision.

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court

is limited to determining whether the SSA's conclusions were supported by substantial evidence

in the record and were based on a correct legal standard." *Selian v. Astrue*, 708 F.3d 409, 417 (2d

Cir. 2013) (per curiam).[1] "Substantial evidence is more than a mere scintilla. It means such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

"We conduct a plenary review of the administrative record, and our focus is on the

administrative ruling more than on the district court's decision." *Id.*

Stacey's primary argument on appeal is that the ALJ erred in declining to give controlling

weight to the opinion of Stacey's treating psychologist. We agree. "The SSA recognizes a rule of

deference to the medical views of a physician who is engaged in the primary treatment of a

claimant." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (per curiam). "[T]he opinion of a

claimant's treating physician as to the nature and severity of the impairment is given 'controlling

weight' so long as it 'is well-supported by medically acceptable clinical and laboratory

diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case

record.'" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting what is now 20 C.F.R. §

404.1527(c)(2)).[2]

Here, the ALJ acknowledged that the length of Tobias's treating relationship with Stacey

would ordinarily entitle her opinion to deference. The ALJ nonetheless declined to give

---

[1] Unless otherwise noted, case quotations omit all internal quotation marks, citations, footnotes, and alterations.

[2] There is no dispute that Tobias qualifies as a "treating physician" within the meaning of this regulation.

3

controlling weight to that opinion. We conclude that this determination was not supported by substantial evidence.

In support of its decision to give little weight to Tobias's opinion, the ALJ noted that Tobias's assessment was based largely on Stacey's self-reported symptoms, rather than on diagnostic testing. This observation is flawed in several respects. First, it ignores that Tobias's opinion was presumably formed not just based on what Stacey told her, but also on her firsthand observations of Stacey's behavior and affect over the course of dozens of meetings spanning several years. Second, the ALJ's apparent expectation that a psychological opinion be formed only after diagnostic testing is unrealistic. A medical diagnosis will often be informed by the patient's subjective description of his or her symptoms. *See Green-Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir. 2003) ("The fact that Dr. Helfand also relied on Green-Younger's subjective complaints hardly undermines his opinion as to her functional limitations, as a patient's report of complaints, or history, is an essential diagnostic tool."). That is all the more true in cases involving mental health, which tend to be less susceptible to objective testing and assessment. *See Price v. Colvin*, 794 F.3d 836, 840 (7th Cir. 2015) ("[P]sychiatric assessments normally are based primarily on what the patient tells the psychiatrist . . . ."). Moreover, the ALJ's newly-minted diagnostic-testing requirement was not applied evenhandedly; the state agency psychologists also did no testing, yet that did not prevent the ALJ from according their opinions "great weight."

The ALJ also concluded that Tobias's opinion was inconsistent with other substantial evidence in the case record. But the purported inconsistencies cited by the ALJ do not withstand scrutiny. First, the ALJ noted that Tobias characterized Stacey as having extreme difficulties interacting appropriately with coworkers and members of the public. This, according to the ALJ, was contradicted by the fact that Stacey maintains a relationship with his wife and occasionally

4

communicates with other family members by telephone. We are skeptical that a claimant's ability to interact with his spouse says much at all about that claimant's ability to interact with the public—or, for that matter, that an ability to carry on telephone conversations reveals anything about the claimant's capacity for face-to-face workplace interaction. But we need not linger on that question, for the record evidence overwhelmingly establishes that Stacey's relationship with his family is tense to the point of hostility. Problems in Stacey's marriage were a frequent theme of his therapy sessions, and for much of his time in treatment it appeared likely that he and his wife would divorce. The evidence likewise establishes that Stacey does not get along with his father, brother, or other family members, with whom he has only infrequent contact. This evidence does not undermine Tobias's opinion that Stacey has severe difficulties with appropriate social interaction.

Second, the ALJ noted that while Stacey was often frustrated during his therapy sessions, Tobias's progress notes also described him as occasionally "talkative, calm, upbeat, and thoughtful." A.R. 24–25. "[I]t is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Estrella v. Berryhill*, 925 F.3d 90, 97 (2d Cir. 2019). Accordingly, we have cautioned ALJs against scouring medical notes to draw their own conclusions based on isolated descriptions. *See id.* ("When viewed alongside the evidence of the apparently cyclical nature of Estrella's depression, the ALJ's two cherry-picked treatment notes do not provide 'good reasons' for minimizing Dr. Dron's opinion."). In any event, there is again no contradiction here. Stacey occasionally being in a good mood does not undermine the conclusion that he is severely limited in social interactions.

Third, the ALJ concluded that, contrary to Tobias's assessment, Stacey is able to concentrate for prolonged periods because he watches television and plays video games. We

doubt that watching television—a largely passive activity—says anything at all about a claimant's ability to concentrate on even simple work tasks. Indeed, Stacey stated that he has difficulty focusing on the content of the shows he watches. And while playing video games may be a somewhat more involved task than watching television, Stacey only plays video games for about half an hour each day. That in no way undermines Tobias's conclusion that Stacey is incapable of prolonged concentration at work.

Finally, the state agency psychologists' opinions were not "sufficiently substantial to undermine the opinion of the treating physician." *Burgess*, 537 F.3d at 128. Although both psychologists concluded that Stacey can concentrate for two-hour blocks of time,[3] A.R. 130, 145, neither cited any evidence in support of that conclusion, nor did they provide any narrative explanation for how they arrived at it. On appeal, the Commissioner has not directed our attention to any evidence supporting the two-hour period, and our review of the administrative record reveals none. It appears to be a wholly arbitrary benchmark invented by the agency psychologists. This unsupported opinion, offered by two psychologists who never so much as examined Stacey, is little more than *ipse dixit*. It certainly is not sufficient to contradict the assessment of a psychologist who saw Stacey regularly for years and formed an opinion based on firsthand observation and conversations. *See Estrella*, 925 F.3d at 98 (noting that "ALJs should not rely heavily on the findings of consultative physicians after a single examination," especially "in the context of mental illness" because "a one-time snapshot of a claimant's status may not be indicative of [his] longitudinal mental health").

Apart from the opinions of the state agency psychologists, the Commissioner argues that the ALJ's determination is supported by the fact that multiple physicians found Stacey's mental

---

[3] Although we refer to the "opinions" of the state agency psychologists, Patalano's assessment appears to have simply been copied wholesale from Goldberg's earlier assessment.

6

status to be "normal" during various appointments. We reject this argument. The ALJ did not rely on—or even refer to—any of these mental status evaluations in rejecting Tobias's opinion regarding Stacey's ability to concentrate. That is very likely because none of the mental status evaluations relied upon by the Commissioner purport to measure Stacey's ability to concentrate. Indeed, the same physicians who assessed Stacey's mental status as "normal" simultaneously concluded that he suffers from ADHD and has difficulty concentrating. *See, e.g.*, A.R. 481–82 (assessment of Charmaine Patel, M.D., finding mental status to be normal but still diagnosing Stacey with, among other things, ADHD); A.R. 476–77 (similar); A.R. 806–07 (similar); A.R. 802–03 (similar assessment from Jessica O'Neil, D.O.); A.R. 795–96 (similar); A.R. 923–24 (similar). It would be improper to rely on these mental status evaluations to conclude that Stacey is capable of prolonged concentration while simultaneously ignoring the contrary conclusion of the very physicians who made the evaluations. Neither we nor the ALJ may "substitute [our] own expertise or view of the medical proof for the treating physician's opinion." *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000).

In summary, no substantial evidence in the record contradicts Tobias's assessment of Stacey's ability to concentrate. The ALJ therefore erred in declining to give Tobias's opinion controlling weight.

Stacey asks that we direct the Commissioner to award benefits on remand. That remedy is appropriate when "the record[] provide[s] persuasive evidence of total disability that render[s] any further proceedings pointless." *Williams v. Apfel*, 204 F.3d 48, 50 (2d Cir. 1999). Here, the vocational expert testified without contradiction that jobs do not exist in significant numbers in the national economy for an employee who is "off-task" for at least 15% of the workday. Once Tobias's opinion is properly given controlling weight, therefore, there is no question that Stacey is totally disabled and entitled to benefits.

The Commissioner nonetheless argues, for the first time on appeal, that we should remand for the ALJ to determine whether Stacey's symptoms are attributable to drug abuse. We typically do not consider arguments that were not made below. *See Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 114 (2d Cir. 2005). In any event, the evidence cited by the Commissioner that he claims suggests drug abuse was already considered by the ALJ, yet the ALJ did not find (or even suggest) that Stacey's impairments may be the result of drug abuse. As the Commissioner concedes, no medical expert ever opined that Stacey's symptoms were caused or exacerbated by his use of painkillers, and in fact the SSA previously concluded that there was no evidence that Stacey has a substance abuse disorder. We are therefore not persuaded that remand for additional fact-finding would serve any purpose.

For the foregoing reasons, we **REVERSE** the judgment of the district court and **REMAND** the matter to the Commissioner for a calculation of disability benefits.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

8