Ferraro v. Saul

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

**At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 12th day of March, two thousand twenty.**

PRESENT:
ROBERT A. KATZMANN,
*Chief Judge*,
MICHAEL H. PARK,
*Circuit Judge*,
GEOFFREY W. CRAWFORD,*
*Chief District Judge*.

_____

Anthony G. Ferraro, Sr.,

*Plaintiff-Appellant*,

v.                                                                              18-3684

Andrew Saul, Commissioner of Social Security
Administration,

*Defendant-Appellee*.

_____

FOR PLAINTIFF-APPELLANT:          Anthony G. Ferraro, Sr., pro se, Downsville,
                                                       NY.

---

\* Chief Judge Geoffrey W. Crawford, of the United States District Court for the District of Vermont, sitting by designation.

FOR DEFENDANT-APPELLEE:                    Ariella Zoltan, Special Assistant United
                                           States Attorney, Ellen E. Sovern, Regional
                                           Chief Counsel, Office of the General
                                           Counsel, *for* Grant C. Jaquith, United States
                                           Attorney, Northern District of New York.

Appeal from a judgment of the United States District Court for the Northern District of New York (Stewart, *M.J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **VACATED** and the case **REMANDED** to the Commissioner for further proceedings consistent with this order.

Plaintiff-appellant Anthony G. Ferraro, Sr., pro se, challenges the Social Security Commissioner's denial of his application for disability insurance benefits and supplemental security income. An administrative law judge ("ALJ") determined that Ferraro was not disabled, and a federal district court affirmed that decision. On appeal, Ferraro argues that the ALJ failed to follow the treating-physician rule in evaluating the opinions of Ferraro's treating psychiatrist, Dr. Michael Talarico, and his treating psychologist, Dr. Joel Hammer. Ferraro also argues that the ALJ's residual functional capacity ("RFC") determination failed to incorporate stress-related limitations contained in the opinion of Dr. Cheryl Loomis, who conducted a consultative psychiatric evaluation of Ferraro.[1] We assume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal.

---

[1] For the first time on appeal, Ferraro argues that he did not have a vocational expert to testify on his behalf, and he challenges the testimony of the vocational expert who was present at his hearing. Ferraro also argues that the ALJ failed to consider certain negative side effects associated with Ferraro's medications. Because these arguments were not raised before the district court—where Ferraro was represented by counsel—they are forfeited on appeal. *See Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

2

"When deciding an appeal from a denial of disability benefits, we focus on the administrative ruling rather than the district court's opinion. On appeal, we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied. Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009).[2]

Under Second Circuit precedent and the applicable regulations, an ALJ must follow a two-step procedure to determine the appropriate weight to assign to the opinion of a treating physician. *See Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). At step one, the ALJ must decide whether the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." *Id.* If the opinion meets these criteria, then it is "entitled to controlling weight." *Id.* Otherwise, the ALJ must proceed to step two and "determine how much weight, if any, to give" the opinion. *Id.* At step two, the ALJ must "explicitly consider" the following factors derived from our decision in *Burgess v. Astrue*, 537 F.3d 117 (2d Cir. 2008): "(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Estrella*, 925 F.3d at 95–96. At both steps one and two, "the ALJ must give good reasons in its notice of determination or decision for the weight it gives the treating source's medical opinion." *Id.* at 96. Moreover, the

---

[2] Unless otherwise indicated, in quoting cases, all internal quotation marks, alterations, emphases, footnotes, and citations are omitted.

"failure to explicitly apply the *Burgess* factors when assigning weight at step two is a procedural error," and unless the ALJ has "otherwise provided good reasons for its weight assignment, we [will be] unable to conclude that the error was harmless and [will] consequently remand for the ALJ to comprehensively set forth its reasons." *Id.* "If, however, a searching review of the record assures us that the substance of the treating physician rule was not traversed, we will affirm." *Id.*

In its decision denying Ferraro's application for benefits, the ALJ did not give controlling weight to the opinions of Dr. Talarico—who met with Ferraro five times between June 2014 and June 2015—and Dr. Hammer—who met with Ferraro roughly twenty times between January 2014 and September 2015. Instead, the ALJ gave Talarico's opinion "some weight" because the portion of the "opinion in which [Talarico] found moderate to very limited restrictions is not supported by the medical evidence." Certified Administrative Record 19 ("CAR"). And the ALJ gave Hammer's opinion "little weight" because it was "not supported by [Hammer's] own examinations of" Ferraro. *Id.* Specifically, the ALJ explained: "Dr. Hammer indicated marked and extreme limitations, which are contradictory to his examinations. Dr. Hammer noted that [Ferraro] was caring for his father round the clock. Global assessment of functioning score was noted to be 60, which are only moderate symptoms. Findings on examination are not consistent with the limitations provided." *Id.* (citations omitted).

In contrast with Talarico's and Hammer's opinions, the ALJ gave "great weight" to "the majority of the opinion of Dr. Loomis," *id.*, who met with Ferraro once for a consultative examination in March 2014. The ALJ explained that Loomis "found that [Ferraro] had no impairment in his ability to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, and learn new tasks." *Id.* In

4

addition, the ALJ noted that Loomis "found that [Ferraro] has moderate impairment in his ability to perform complex tasks independently or under supervision." *Id.* (citation omitted). And the ALJ stated that Loomis's "opinion is further supported by the opinion of Dr. Hoffman"—a state agency medical examiner who reviewed Ferraro's medical records—"who found that [Ferraro] would have difficulties performing complex tasks independently." *Id.*

Below and on appeal, Ferraro has argued that the ALJ failed to apply the *Burgess* factors or otherwise provide "good reasons" for assigning reduced weight to the opinions of Drs. Talarico and Hammer. We agree. First, the ALJ did not "explicitly consider . . . the frequency, length, nature, and extent of treatment" that Ferraro had with Talarico and Hammer. *Estrella*, 925 F.3d at 95. The Commissioner contends that the ALJ satisfied its burden with respect to this factor because it acknowledged that Talarico and Hammer had ongoing treatment relationships with Ferraro beginning in 2014.[3] But merely acknowledging the existence of treatment relationships is not the same as explicitly considering "the frequency, length, nature, and extent of treatment." This is particularly true where, as here, the relationships involved dozens of appointments over nearly two years, and the doctors worked continuously with the patient to develop and monitor the success of various treatment plans.

Nor did the ALJ give "good reasons" for discounting the "amount of medical evidence supporting the opinion[s]" of Talarico and Hammer, or "the consistency of the opinion[s] with the remaining medical evidence." *Id.* at 95–96. With respect to Talarico's opinion in particular, the ALJ made only the conclusory assessment that the portion of the "opinion in which [Talarico]

---

[3] The ALJ incorrectly stated that Ferraro first met with Talarico in 2011. In fact, Ferraro first met with Talarico in 2014.

found moderate to very limited restrictions is not supported by the medical evidence." CAR 19. And although the ALJ offered some additional explanation for giving "little weight" to Hammer's opinion—that Ferraro cared for his father and had a Global Assessment of Functioning ("GAF") score of 60—this explanation does not justify the conclusion that Hammer's opinion was "not supported by his own examinations of" Ferraro. *Id.* To the contrary, Ferraro's ability to care for his father at home has little relevance to his ability to function in a work setting where he would need to interact appropriately with co-workers and take instructions from authority figures. And Ferraro's GAF score, which was "bereft of any explanation," "do[es] not provide 'good reasons' for assigning little weight to Dr. [Hammer's] opinion." *Estrella*, 925 F.3d at 97–98.

Furthermore, the ALJ appears to have discounted the opinions of Talarico and Hammer in part because they were inconsistent with the opinion offered by Dr. Loomis. But "[w]e have frequently cautioned that ALJs should not rely heavily on the findings of consultative physicians after a single examination," and we have noted that "[t]his concern is even more pronounced in the context of mental illness where . . . a one-time snapshot of a claimant's status may not be indicative of her longitudinal mental health." *Id.* at 98. Here, in particular, the ALJ seems to have given weight to Loomis's opinion because it supported a finding that Ferraro was not disabled, rather than giving it weight because of its consistency with the underlying medical evidence. And although the ALJ noted that Loomis's opinion was supported by that of Dr. Hoffman, Hoffman did not examine Ferraro, and indeed seems to have formed an assessment based in part on Loomis's notes.

For these reasons, we conclude that the ALJ failed to "explicitly consider" the *Burgess* factors or otherwise provide "good reasons" for assigning reduced weight to the opinions of Drs.

6

Talarico and Hammer. Nor does "a searching review of the record assure[] us that the substance of the treating physician rule was not traversed." *Id.* at 96. Accordingly, we **VACATE** the judgment of the district court and **REMAND** to the Commissioner for further proceedings. On remand, the ALJ should consider whether the opinions of Talarico and Hammer are "well-supported by medically acceptable clinical and laboratory diagnostic techniques," or are "inconsistent with the other substantial evidence in the case record." *Id.* at 95. The ALJ should also explicitly weigh each of the *Burgess* factors discussed above. And although we express no opinion on Ferraro's argument that his RFC determination failed to incorporate stress-related limitations contained in Dr. Loomis's opinion, we encourage the ALJ to consider this issue as well.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

7