19-1573-cv
Demars v. Commissioner of Social Security

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**


At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York on the 6th day of January, two thousand twenty-one.

Present:     ROSEMARY S. POOLER,
             RICHARD C. WESLEY,
             SUSAN L. CARNEY,
                      *Circuit Judges*.

_____

JOSEPH JOHN DEMARS,

                    *Plaintiff-Appellant*,

            v.                                              19-1573-cv


COMMISSIONER OF SOCIAL SECURITY,

                    *Defendant-Appellee*.

_____

Appearing for Appellant:     Samir Deger-Sen, Latham & Watkins LLP (L. Allison Herzog, *on the brief*), Washington, D.C.

Appearing for Appellees:     Timothy A. Razel, Special Assistant U.S. Attorney, New York, N.Y. (Ellen E. Sovern, Of Counsel, Regional Chief Counsel, Region II, Office of the General Counsel, Social Security Administration, *on the brief*), *for* John H. Durham, United States Attorney for the District of Connecticut, New Haven, CT.

Appeal from the United States District Court for the District of Connecticut (Merriam, *M.J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of said District Court be and it hereby is **REVERSED** and **REMANDED** to the District Court with direction to remand to the Commissioner of Social Security for the calculation of benefits.

Joseph John Demars appeals from the March 31, 2019 judgment of the United States District Court for the District of Connecticut (Merriam, *M.J.*) affirming the Commissioner's denial of disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

In January 2004, Demars slipped from a truck he was driving and twisted his right knee while working as a cement truck driver. Following this injury, Demars began to experience impairment of his right knee. Demars underwent three knee replacement surgeries. Several doctors treated Demars from January 2004 through March 31, 2009, his last insured date. These doctors include Dr. Vincent Williams, an orthopedist. Williams performed Demars' second and third knee replacement surgeries in 2006 and 2008. Doctors' notes throughout the relevant period indicate that Demars suffered constant right knee pain. Dr. Rowland Mayor, an orthopedist who treated Demars during his recovery in 2005, opined that Demars' right knee pain "rendered him . . . unable to enjoy most of his activities of daily living." A.R. at 698. In April 2008, Dr. Marjorie Golden, an infectious disease doctor, opined that Demars was in "significant distress secondary to pain" and noted that Demars stated he was unable to walk. A.R. at 518. In March 2009, Dr. Lloyd Saberski treated Demars for chronic pain management and opined that Demars did not have a "work capacity, given his pain in the sitting position and his need for OxyContin." A.R. at 471. He diagnosed Demars with "[c]hronic debilitating right knee pain" and a disability. A.R. at 469.

In a letter dated November 13, 2014, Williams stated that Demars had been his patient since 2006, had multiple surgeries, and a total knee replacement. Williams opined that Demars is "completely disabled," "has significant limitations due to his knees bilaterally, as well as, multiple medical comorbidities," and "has been temporarily totally disabled and now permanently disabled since his referral and treatments in 2006."A.R. at 999. Then, on May 13, 2016, Williams rendered an assessment in a lower extremities impairment questionnaire, opining that Demars had significant symptoms and limitations since 2006 rendering him unable to work, including chronic suppression of an infected right knee, mechanical complications of his joints, left knee osteoarthritis, and obesity. He also opined that Demars lacked any ability to sit, stand, or walk in an eight-hour workday, and that Demars could not carry objects due to his use of bilateral crutches.

Two state agency physicians, Dr. Abraham Bernstein and Dr. Virginia Rittner, reached a different conclusion. Relying on medical records alone, Bernstein opined on January 13, 2015 that Demars could sit for six hours in an eight-hour workday, stand or walk for two hours with

normal breaks, occasionally climb stairs, and frequently lift or carry up to ten pounds. Rittner's opinion was similar, but noted that Demars "[u]ses a cane and crutches." A.R. at 105.

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment [that] can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration has outlined a five-step sequential process that considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*Estrella v. Berryhill*, 925 F.3d 90, 94 (2d Cir. 2019). The claimant bears the burden at steps one through four. *Id.* The burden then shifts to the Commissioner at step five. *Id.*

When reviewing an administrative law judge's denial of disability benefits, this Court "focus[es] on the administrative ruling rather than the district court's opinion." *Id.* at 95 (internal quotation marks omitted). This Court will set aside an ALJ's decision if it is based on legal error or is not supported by substantial evidence. *Id.* "Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The ALJ must set forth "crucial factors . . . with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." *Id.* (internal quotation marks omitted).

The regulations implementing the Social Security Act create a presumption in favor of adopting the opinion of a claimant's treating physician. *See* 20 C.F.R. § 404.1527(c)(2). The ALJ must give a treating physician's opinion controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Id.* If the ALJ finds that the treating physician's opinion does not satisfy this threshold, it must determine how much weight, if any, to give it by "explicitly consider[ing]" four factors: "(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Estrella*, 925 F.3d at 95-96 (alteration and internal quotation marks omitted). The ALJ must "give good reasons in its notice of determination or decision for the weight it gives the treating source's medical opinion." *Id.* at 96 (alterations and internal quotation marks omitted).

The ALJ determined in relevant part that Demars: (1) was not engaged in substantial gainful activity from January 6, 2004 through his last insured date of March 31, 2009; (2) had severe impairments including "obesity, degenerative joint disease of the right knee with a history

3

of a knee replacement, and osteoarthritis of the left knee;"(3) did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment, specifically listing 1.02; (4) was unable to perform any past relevant work; and (5) had the residual functional capacity to perform sedentary work, as defined in 20 C.F.R. § 404.1567(a), as a jewelry painter, jewelry stringer, security surveillance monitor, and grinding machine operator. Special App'x 3-4, 12-13.

Demars primarily challenges the ALJ's failure to afford controlling weight to Williams' opinion, specifically, Williams' findings in a May 2016 lower extremities impairment questionnaire that Demars could not sit, stand, or walk in an 8-hour workday, needed to elevate his right leg every hour for 20-30 minutes, and was unable to perform even low stress work due to chronic pain and limited mobility with need for bilateral crutches.

Although Williams had treated Demars for roughly ten years, the ALJ assigned "little weight" to his opinion for three reasons. Special App'x at 11. First, the ALJ found that Williams' assessment was inconsistent with Williams' notes in February 2009 and January 2014 that Demars was "only capable of the most sedentary work." Special App'x at 11. Second, the ALJ considered it probative that the 2016 opinion "was provided several years after the period in question." Special App'x at 11. Third, the ALJ found that Williams' treatment notes from 2006 through 2009 finding Demars totally disabled were not entitled to any "special significant weight" because they were administrative findings and not medical opinions. Special App'x at 11.

We agree with Demars that the ALJ's determination that he was not disabled from January 2004 through 2009 is not supported by substantial evidence. Severe difficulty in ambulation during this period is the crux of Demars' claim. The primary support for the ALJ's determination to the contrary was the *absence* of consistent notation in the treatment records of Williams and others that Demars was using an assistive device or two crutches to walk, and an occasional observation that he walked using a (presumably single) cane. Although the ALJ is entitled to draw reasonable inferences from silences in the record, *see Talavera v. Astrue,* 697 F.3d 145, 153-54 (2d Cir. 2012), the record must still contain substantial evidence supporting the ALJ's view, even acknowledging that the applicant bears the burden of proof in the first four steps of the analysis. In our view, the record does not contain such evidence.

The silences that the ALJ pointed to in Demars' case are insufficient to outweigh what is otherwise extensive evidence of Demars' several knee replacements and related surgeries and persistent, severe difficulty ambulating. *Cf. Estrella*, 925 F.3d at 97 (finding error, in the context of mental illness, "for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working"). These absences do not support an affirmative finding that Demars was capable of "[s]edentary work," which requires an ability to stand, walk, and lift. 20 C.F.R. § 404.1567(a). Nor does Williams' February 2009 observation (highlighted by the ALJ) suffice to find Demars not disabled: Williams merely noted then that Demars "use[d] crutches, but [could] ambulate without them." Special App'x at 9; A.R. at 479. We understand from this note, taken in context, that Williams was observing Demars' ability to walk a few steps in the doctor's office. This is inadequate evidence that Demars could ambulate effectively as defined by the regulations—*i.e.*,

4

that he could sustain "a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living." 20 C.F.R. Pt. 404, Subpt. P, App. 1(B)(2)(b). And, contrary to the ALJ's view, these observations are more than mere administrative findings; rather, they are due significant weight because they were rendered by Williams as Demars' treating physician throughout the contemporaneous period.

For these reasons, Demars' arguments persuade us that substantial evidence does not support a finding that Demars had the ability to ambulate effectively. An inability to ambulate effectively is a factor in both Listings 1.02 and 1.03, by which Demars' condition must be measured.[1] During the relevant period, substantial evidence shows that Demars suffered "an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.00(B)(2)(b)(1). Treatment notes reflect that Demars suffered "fairly constant . . . right knee pain" that "rendered him . . . unable to enjoy most of his activities of daily living." A.R. 698. Additionally, from 2004 to 2009, Demars' doctors repeatedly noted his use of crutches or that Demars had significant pain while walking that was exacerbated by most forms of activity.

Substantial evidence in the record further supports the conclusion that Demars' condition at least met the requirements for Listing 1.03, a listing that the ALJ did not mention. 20 C.F.R. Pt. 404, Subpt. P, App. 1. Strong evidence supports the conclusion that his impairment met the severity and duration requirements for Listing 1.03 or Listing 1.02 as well. *See* 20 C.F.R. § 404.1526(a). We therefore conclude that the ALJ's decision that Demars did not have an impairment that met the severity of a listed impairment and that Demars was able to perform sedentary work is not supported by substantial evidence, and we reverse those findings.[2]

We further conclude that the record here provides "persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose." *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980). Where "no purpose would be served by" a remand for additional evidence, we instead remand for calculation of benefits. *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 644 (2d Cir. 1983) (remanding for the sole purpose of calculating award of benefits). Accordingly, the judgment of the district court hereby is REVERSED and

---

[1] Listing 1.02 is defined as "major dysfunction of a joint (due to any cause)," and Listing 1.03 as "[r]econstructive surgery or surgical arthrodesis of a major weight-bearing joint, with inability to ambulate effectively . . . and return to effective ambulation did not occur, or [was] not expected to occur, within 12 months of onset." 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

[2] At the same time, we agree with the Commissioner that substantial evidence supports the ALJ's decision not to assign controlling weight to Williams' 2016 opinion. As the ALJ noted, the 2016 opinion was provided years after the relevant period and contained some inconsistencies with the prior course of notes. It also seemed based in part (and mistakenly) on osteoarthritis of Demars' left knee. That we agree to discount the 2016 opinion, however, does not mean that we agree with the ALJ that the opinion merits "little weight" or that the opinion should preclude reliance on Williams' consistent records from 2006 through 2009 as to Demars' condition. We discuss these in the text.

5

REMANDED for entry of judgment remanding to the Commissioner for a calculation of benefits owed to Demars.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk