20-204-cv
*Drake v. Saul*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 11th day of December, two thousand twenty.

PRESENT:
> GUIDO CALABRESI,
> ROBERT A. KATZMANN,
> RICHARD J. SULLIVAN,
> *Circuit Judges.*

---

JOHN DRAKE, JR.,

> *Plaintiff-Appellant*,

v.                                                    No. 20-204-cv

ANDREW M. SAUL, Commissioner of Social Security,

> *Defendant-Appellee*.

---

| | |
|---|---|
| For Plaintiff-Appellant: | PETER A. GORTON, Lachman & Gorton, Endicott, NY. |
| For Defendant-Appellee: | SHIRA SISKIND, Special Assistant United States Attorney (Ellen E. Sovern, Regional Chief Counsel – Region II, Office of the General Counsel, Social Security Administration, *on the brief*), *for* Antoinette T. Bacon, Acting United States Attorney, |

Northern District of New York, Syracuse, NY.

Appeal from the judgment of the United States District Court for the Northern District of New York (Dancks, *M.J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **VACATED**, and the case **REMANDED** for further proceedings.[1]

Plaintiff-appellant John Drake, Jr., appeals from the judgment of the United States District Court for the Northern District of New York upholding the decision of the Administrative Law Judge (the "ALJ") denying Drake's applications for disability insurance benefits and supplemental security income. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

"In reviewing a district court's decision upholding a decision of the Commissioner, we review the administrative record *de novo* to determine whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard." *Zabala v. Astrue*, 595 F.3d 402, 408 (2d Cir. 2010).[2] Under this standard, we hold that certain of the ALJ's findings are not supported by substantial evidence or adequate legal reasoning.

*First*, we agree with the plaintiff that the ALJ failed to justify the weights afforded to the opinions of various medical experts for the purpose of determining Drake's residual functional capacity ("RFC"). Beginning with Dr. Aamir Rasheed, we find the ALJ's cursory statement that

---

[1] Judge Sullivan would affirm the district court's judgment, finding that substantial evidence in the record supports the ALJ's denial of benefits.

[2] Unless otherwise indicated, case quotations omit all internal quotation marks, alterations, footnotes, and citations.

"[n]o weight is assigned [to his] assessment regarding time off task because it is not supported by the evidence" to be inadequate. App'x 48. Even assuming that Dr. Rasheed were not a treating source,[3] the ALJ would still be required to consider the relevant regulatory factors. *See* 20 C.F.R. § 404.1527(c) (2012) ("Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's medical opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion."); *id.* § 416.927(c) (2012) (same).[4] These factors include, *inter alia*: whether the source examined the patient; the frequency of any such examination; the nature, length, and extent of treatment relationship; whether the source's opinion is supported by evidence and consistent with the record as a whole; and the specialization of the source. *See id.* The ALJ's conclusory decision to assign "[n]o weight" to Dr. Rasheed's "assessment regarding time off task because it is not supported by the evidence," without any further explanation as to why it is not supported by the evidence or any discussion of other relevant regulatory factors, App'x 48, does not instill much confidence that the ALJ complied with those regulatory provisions. *See Ferraris*

---

[3] A threshold issue here is whether Dr. Rasheed should be deemed a treating source, whose opinion would ordinarily be given "controlling weight." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (2012); *see Estrella v. Berryhill*, 925 F.3d 90, 95–96 (2d Cir. 2019). While the ALJ did not discuss Dr. Rasheed's treating physician status at all, the ALJ must have assumed that he was not a treating physician, and we agree. Even though the record indicates that Dr. Rasheed saw Drake three times, two of those instances were in his capacity as a supervising physician during nerve block and trigger point injections carried out by a nurse practitioner, meaning Dr. Rasheed examined Drake only once. In this context, those three interactions are not enough to constitute an "ongoing treatment relationship" where they saw each other "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [Drake's] medical condition(s)." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) (2012).

[4] 20 C.F.R. §§ 404.1527 and 416.927 were subsequently revised. *See* 82 Fed. Reg. 5844 (Jan. 18, 2017); 82 Fed. Reg. 15132 (Mar. 27, 2017). Because Drake's claims were filed before the effective date of these revisions, the earlier version of the rules governs in this case. We note that there is no meaningful difference between the two versions of the regulations for the purposes of this case.

*v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984) ("[T]he crucial factors in any determination must be set forth with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence."); *Klemens v. Berryhill*, 703 F. App'x 35, 36 (2d Cir. 2017) (summary order) ("Among the ALJ's legal obligations is the duty to adequately explain his reasoning in making the findings on which his ultimate decision rests . . . ."). Accordingly, we direct the district court to instruct the ALJ to carefully engage with the relevant regulatory factors to explain the weight given to Dr. Rasheed's opinion regarding time off task and absenteeism.

The same concern extends to the weights that the ALJ afforded to the opinions of non-treating physicians Dr. Justine Magurno and Dr. Patrick Hughes.[5] Based on the ALJ's RFC determination that Drake does not face any restriction regarding time off task, we infer that the ALJ heavily discounted Dr. Magurno's opinion that Drake faced "[m]oderate schedule disruptions due to prostrating headaches." App'x 95. Again, the ALJ provided no explanation as to why this portion of Dr. Magurno's opinion was afforded little weight. Remand is warranted with the instruction for the ALJ to explain why.

The lack of any explanation for granting "[g]reat evidentiary weight" to Dr. Hughes' assessment is similarly problematic. *Id.* at 43. Again, the ALJ did not address the regulatory factors set forth in 20 C.F.R. §§ 404.1527(c) and 416.927(c), some of which might arguably cut against the ALJ's heavy reliance on Dr. Hughes' opinion, because Dr. Hughes never treated Drake and he examined Drake only in a consultative capacity. *See Estrella*, 925 F.3d at 98 ("We have frequently cautioned that ALJs should not rely heavily on the findings of consultative physicians after a single

---

[5] We find no error, however, in the ALJ's decision to give no weight to Dr. Robert Russell's opinion about Drake's disability, to the extent that the disability determination is a matter reserved to the Commissioner, *see* 20 C.F.R. §§ 404.1527(d), 416.927(d) (2012), and that Dr. Russell's comments on the implications of Drake's headaches and nausea were outside his area of expertise as a psychologist.

4

examination."). Nevertheless, the ALJ gave great evidentiary weight to Dr. Hughes for reasons unstated and thereby unreviewable by us. The ALJ must explain why on remand.

*Second*, substantial evidence does not support the ALJ's negative credibility determination regarding Drake's testimony about the intensity and frequency of his headaches, because several of the reasons relied upon by the ALJ in reaching this determination were erroneous. For instance, the ALJ noted that "all of the information in evidence is subjective, especially since no medical provider observed [the] claimant with any signs of a headache in an office setting that they believed." App'x 48. To the extent the ALJ drew any negative inference as to Drake's credibility from this statement, such inference would be erroneous, because headaches are subjective symptoms not subject to objective testing. *See Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003) ("As a general matter, objective findings are not required in order to find that an applicant is disabled."); *see also Mnich v. Colvin*, No. 5:14-cv-740, 2015 WL 7769236, at \*21 (N.D.N.Y. Sept. 8, 2015), *report and recommendation adopted*, 2015 WL 7776924 (N.D.N.Y. Dec. 2, 2015) ("Neither the SSA nor the courts in this Circuit have required that an impairment, including migraines, be proven through objective clinical findings.").

Moreover, the record evidence directly contradicts the ALJ's statement that no medical provider observed any signs of a believable headache in an office setting. As one among many examples, Dr. Russell, a psychologist, expressly noted that Drake complained of a headache during the first of their two sessions and found "no evidence for him to be 'faking bad' or malingering" during his psychological tests. App'x 104. Accordingly, Dr. Russell noted that Drake "has been credible in describing his [c]ognitive symptoms which suggests that his complaints of chronic headaches and nausea may also be credible." *Id.* at 106. More generally, Drake's medical providers

have been attempting to treat Drake's headaches over the course of years, which they would not have done if they did not believe he was experiencing headaches.

In further support of her negative credibility determination, the ALJ also relied on an incident noted by Drake's original treating physician, Dr. Brian Wood. During one of Drake's visits with Dr. Wood, Drake claimed that he had to leave the examination room to vomit, but Dr. Wood believed that Drake was faking it in order to convince Dr. Wood that Drake was, in fact, ill. However, the ALJ's reference to Dr. Wood's comment was taken out of context, because Dr. Wood also wrote that Drake "does not need to [fake sick] whatsoever," presumably because Dr. Wood had already been aware of the severity of Drake's symptoms and did not need any further convincing. *Id.* at 82. Indeed, Dr. Wood also wrote in his notes from the same visit that Drake was "seen in horrible condition, unable to work," *id.* at 81, that he "still [had] significant headache, dizziness, [and] nausea," *id.*, and that he was "[a] troubled young man with history of concussion with multiple symptoms," *id.* at 82.

Moreover, with respect to Drake's failure to comply with medications, the ALJ found that "[Drake] alleged he could not comply because worker's compensation refused to pay for it. Later, he did take it, but did so irregularly. The issue of compliance may have been voluntary to a degree and, to that extent, raises doubts about the severity of the symptoms." *Id.* at 48. While the administrative transcript pages that the ALJ cites support that Drake's financial situation at times prevented him from obtaining prescribed medications, taking into consideration a failure to take medication under these circumstances is clearly erroneous under our prior precedents. *See Shaw v. Chater*, 221 F.3d 126, 133 (2d Cir. 2000).

In addition, the ALJ wrote: "During his hearings, the claimant did not wear any special glasses, was attentive and did not appear in distress." App'x 48. This, too, is largely irrelevant to

6

Drake's credibility. Although ALJs may appropriately take note of an applicant's demeanor, *see Shaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998), we think that here, instead, the ALJ deemed Drake not credible because he did not appear to be suffering from a headache on the day of his hearing. That inference was erroneous. *See Estrella*, 925 F.3d at 97 ("A person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days."). Additionally, the ALJ's comment that Drake was not wearing special glasses was also improper because nothing in the medical record suggests that Drake needed special eyewear. On remand, we instruct the ALJ to reconsider its overall evaluation of Drake's credibility without reference to these improper factors.

*Finally*, it follows from all of the above that the district court should also remand this case for the agency to reconsider its step five determination, with instructions to adjust the hypothetical question to the vocational expert accordingly if the ALJ changes her RFC determination. *See McIntyre v. Colvin*, 758 F.3d 146, 152 (2d Cir. 2014) ("An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as," *inter alia*, the hypothetical "accurately reflect[s] the limitations and capabilities of the claimant involved.").

We have reviewed the parties' remaining arguments and find in them no reason to disturb the conclusions above. For the foregoing reasons, we **VACATE** the judgment of the district court and **REMAND** with instructions to remand the matter to the Commissioner for further proceedings consistent with this order.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk

7