20-3943-cv
Schillo v. Kijakazi

# In the
# United States Court of Appeals
## For the Second Circuit

August Term, 2021
No. 20-3943-cv

BRENDA LYNN SCHILLO,
*Plaintiff-Appellant,*

*v.*

KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,
*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of New York.
No. 5:19-cv-00999 — Thérèse Wiley Dancks, *Magistrate Judge.*

ARGUED: JANUARY 5, 2022
DECIDED: APRIL 6, 2022
AMENDED: APRIL 6, 2022

Before: JACOBS, RAGGI, and NARDINI, *Circuit Judges.*

Plaintiff-Appellant Brenda Lynn Schillo applied for Social Security Disability Insurance and Supplemental Security Income benefits under the Social Security Act, 42 U.S.C. §§ 401–434. After a hearing, an administrative law judge considered the medical opinions of Schillo's treating physicians as well as other evidence. The administrative law judge denied Schillo's claim, finding that she was not disabled under the Social Security Act because she had the residual functional capacity to perform her past relevant work as a project manager. That decision became the final decision of the Commissioner of Social Security. Schillo sought judicial review before the United States District Court for the Northern District of New York (Thérèse Wiley Dancks, *M.J.*), and the district court affirmed. We **AFFIRM** because substantial evidence in the record supports the ALJ's assignment of less than controlling weight to the opinions of Schillo's treating physicians about the nature and severity of her impairments, and the ALJ's finding as to Schillo's residual functional capacity. Although the ALJ committed a procedural error when applying the treating physician rule, 20 C.F.R. § 404.1527(c), which applies to claims like Schillo's that were filed before March 27, 2017, we hold that the error was harmless.

---

JUSTIN M. GOLDSTEIN, Law Offices of Kenneth Hiller, PLLC, Amherst, NY, *for Plaintiff-Appellant*.

MOLLY E. CARTER (Michael Pegrio, Regional Chief Counsel, *on the brief*), Office of the General Counsel, Social Security Administration, Boston, MA, *for Defendant-Appellant*.

---

WILLIAM J. NARDINI, *Circuit Judge*:

The Social Security Act, 42 U.S.C. §§ 401–434, creates a system of disability insurance and other benefits for qualifying applicants. The task of determining whether an applicant is disabled and therefore eligible for benefits is entrusted in the first instance to the Social Security Administration ("SSA"). If the agency initially denies an application, the claimant is entitled to request a hearing before an administrative law judge ("ALJ"). The ALJ is charged with developing the factual record, conducting a non-adversarial administrative hearing, and serving as an impartial decisionmaker, all with the goal of fairly and expeditiously adjudicating claims. For claims filed before March 27, 2017, the ALJ's decision must account for the "treating physician rule": If the record contains a treating physician's opinion about the nature and severity of the claimant's impairments, the ALJ must determine whether, in light of the

3

administrative record, that opinion is entitled to controlling weight, or something less. Congress has authorized federal courts to engage in limited review of final agency decisions in Social Security disability cases. We may vacate the agency's disability determination only if it is based on legal error or unsupported by "substantial evidence"— that is, if no reasonable factfinder could have reached the same conclusion as the ALJ.

In May 2016, Plaintiff-Appellant Brenda Lynn Schillo filed a claim for Social Security Disability Insurance and Supplemental Security Income benefits. Schillo claimed disability based on her medical conditions of cerebral palsy, fibromyalgia, benign tremors, and osteoarthritis. Schillo relied, in part, on opinions of two of her treating physicians. After a hearing, an ALJ assigned only partial weight to the treating physicians' opinions. Based on all of the medical evidence in the record, the ALJ determined that Schillo was not disabled because her residual functional capacity ("RFC") still

4

allowed her to perform her past relevant work as a project manager.

Schillo challenged this determination through the agency appeals process and then in the United States District Court for the Northern District of New York (Thérèse Wiley Dancks, *M.J.*), but both times the ALJ's decision was upheld. She now appeals the denial of benefits, arguing primarily that (1) the ALJ's RFC determination (and particularly the ALJ's assignment of lesser weight to the treating physicians' opinions) was not supported by substantial evidence; and (2) the ALJ committed procedural error by failing to explicitly consider certain factors listed in 20 C.F.R. § 404.1527(c) when deciding how much weight to accord the treating physicians' opinions.

We find Schillo's arguments unpersuasive and therefore affirm. In doing so, we recognize that adjudication of Social Security disability claims is a highly case-specific endeavor that depends on the objective medical evidence in the administrative record. Upon review of this record, we hold that substantial evidence supported the

ALJ's determinations and that any procedural error was harmless.

## I. Background

### A. Statutory & regulatory framework

Subchapter II of the Social Security Act, 42 U.S.C. §§ 401–434, sets forth the benefits available to an eligible claimant who is "disabled." Under 42 U.S.C. § 423(d)(1)(A), "[a] claimant is disabled and entitled to disability insurance benefits if she is unable . . . 'to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)). The "ultimate finding of whether a claimant is disabled and cannot work [is] 'reserved to the Commissioner.'" *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (quoting 20 C.F.R. § 404.1527(e)(1) (1991)). To make that finding, the agency follows a five-step process detailed in 20 C.F.R.

6

§ 404.1520(a)(4)(i)–(v). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *see also* 20 C.F.R. § 404.1520(a)(4).

Under the five-step process, the Commissioner determines: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe physical or mental impairment, or combination of severe impairments; (3) whether the impairment (or combination) meets or equals the severity of one of the impairments specified in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments"); (4) whether, based on an assessment of the claimant's residual functional capacity, the claimant can perform any of her past relevant work; and (5) whether the claimant can make an adjustment to other work given the claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(i)–(v). "The claimant bears the burden of proof in the

first four steps of the sequential inquiry." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013). In step five, the burden shifts, to a limited extent, to the Commissioner to show that other work exists in significant numbers in the national economy that the claimant can do. 20 C.F.R. § 404.1560(c)(2); *see Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009). Because the shift in step five is limited, the Commissioner "need not provide additional evidence of the claimant's residual functional capacity." *Poupore*, 556 F.3d at 306; *see* 20 C.F.R. § 404.1560(c)(2).

The ultimate finding of whether the claimant is disabled is reserved to the agency; but where the record includes the opinions of treating physicians, "the Social Security Administration considers the data that [their opinions] provide [and then] draws its own conclusions as to whether those data indicate disability." *Snell*, 177 F.3d at 133. A treating physician's opinion that the claimant is disabled may carry particular weight, but it is not itself determinative

of that finding. *Id.*

For claims filed before March 27, 2017 (as is the case here), the agency must apply 20 C.F.R. § 404.1527. Pursuant to that regulation, the ultimate finding on the claimant's residual functional capacity is reserved to the Commissioner. 20 C.F.R § 404.1527(d)(2). In making that finding, the agency "use[s] medical sources, including [the claimant's] treating source, to provide evidence, including opinions, on the nature and severity of [the claimant's] impairment(s)." *Id.* The agency must follow what is commonly called the "treating physician rule" when considering the opinion of a claimant's treating source: If the agency finds "that a treating source's medical opinion on the issue(s) of the nature and severity of [the claimant's] impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the agency] will give it controlling weight." *Id.* The agency has adopted new regulations for

claims filed on or after March 27, 2017, which change how the agency considers the opinions of treating sources.[1] Accordingly, our application of the treating physician rule in this opinion is limited to claims like Schillo's that were filed before the effective date of the new regulation and are therefore still governed by 20 C.F.R. § 404.1527.

## B. Administrative proceedings

Schillo's background is laid out in detail in the administrative record. As relevant here, she received a high school diploma, later attended vocational school for computer systems operations, and in

---

[1] On January 18, 2017, the Social Security Administration promulgated the regulations now found at 20 C.F.R. §§ 404.1520c and 416.920c, which apply to claims filed on or after March 27, 2017. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017). For these cases, the new regulations no longer apply the treating physician rule. *See id.* ("[W]e are not retaining the treating source rule in final 404.1520c and 416.920c for claims filed on or after March 27, 2017."). Going forward, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). The agency will instead consider the factors found at § 404.1520c(c) during its review of these sources.

It is undisputed that Schillo filed her claim on May 19, 2016, and that the earlier regulation therefore applies to this case.

2005 obtained a real estate license (which has since expired). Schillo

has worked as a service repair coordinator (the last position she held),

an office assistant, a self-service administrator, a customer service

representative, a data analyst, an accounts payable clerk, and a project

specialist. Schillo has not worked since May 17, 2016. She states that

she stopped working due to chronic pain and fatigue from

fibromyalgia. Through her employer, she was on short-term

disability until November 2016 but was denied long-term disability

benefits.

On May 19, 2016, Schillo filed a claim for Social

Security Disability Insurance and Supplemental Security Income

benefits based on cerebral palsy, fibromyalgia, benign tremors, and

osteoarthritis, alleging a disability onset date of May 17, 2016. The

SSA denied Schillo's application on August 1, 2016. Schillo then

requested a hearing before an ALJ.

The ALJ held a video hearing on April 11, 2018, at which Schillo

11

was represented by counsel. During the hearing, the ALJ questioned Schillo about her family and living situation, financial assistance, employment history, daily activities, medical conditions, and symptoms she experienced from those conditions. The ALJ considered the administrative record, which includes MRI results, x-ray results, and notes documenting Schillo's visits with different health care providers, including Arthritis Health Associates and the Bone and Joint Center. The record also contains notes from Schillo's visits with her treating physicians—Dr. Hassan Shukri, her neurologist, and Dr. Michael Picciano, her primary care provider. Further, the record contains the opinion of consultative examiner Dr. Kalyani Ganesh, from whom the SSA's Division of Disability Determination had requested an internal medicine examination in connection with Schillo's claim for disability.

The ALJ issued her findings of fact and conclusions of law on May 25, 2018. The ALJ concluded that Schillo had not been under a

disability within the meaning of the Social Security Act from May 17, 2016, through the date of the ALJ's decision. She therefore denied Schillo's claim for disability. In reaching this conclusion, the ALJ made the following findings: First, Schillo met the insured status requirements of the Social Security Act through December 31, 2021. Second, Schillo had not engaged in substantial gainful activity since May 17, 2016. Third, Schillo had the following severe impairments: fibromyalgia, Charcot-Marie-Tooth disease, essential tremor, and osteoarthritis. Fourth, Schillo did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in the Listing of Impairments. Fifth, Schillo had the residual functional capacity to lift, carry, push, or pull twenty pounds occasionally and ten pounds frequently, sit for six hours, and stand and/or walk for six hours in an eight-hour day. She could frequently balance and stoop; occasionally kneel, crouch, climb ramps, climb stairs, and operate foot controls;

13

and never crawl or climb ladders, ropes, or scaffolds. Schillo could have no exposure to vibration or workplace hazards, including unprotected heights and moving mechanical parts. She could frequently handle, finger, and feel with her dominant right hand, and she could occasionally handle, finger, and feel with her non-dominant left hand. Lastly, Schillo was capable of performing past relevant work as a project manager, because it did not require the performance of work-related activities precluded by Schillo's RFC.

In assessing Schillo's RFC, the ALJ weighed the opinions of her treating physicians and determined that they should not be afforded controlling weight. First, the ALJ addressed the conclusory nature of Dr. Shukri's opinions. On May 19, 2016, Dr. Shukri opined that most of Schillo's symptoms will "get worse with age" making it "very difficult for her to do any physical job"; Dr. Shukri thus noted that Schillo could "[m]aybe . . . qualify for social security disability." Admin. R. on Appeal at 285. On October 5, 2016, Dr. Shukri opined

14

that Schillo "is unable to perform any job because of [her] tremor." *Id.* at 486. And on more than one occasion Dr. Shukri concluded that Schillo is "permanently totally disabled." *Id.* at 356; *see also id.* at 487 ("For now we will consider her permanently totally disabled because of the tremor and the spasticity in bilateral lower extremities."). The ALJ found that those opinions were "conclusory" and "did not speak to [Schillo's] specific physical capabilities or limitations." App'x at 75. The ALJ also found the terms Dr. Shukri used—such as "physical job," "very difficult," and "might qualify"—to be "vague, undefined terms with regard to the determination of an individual's residual functional capacity and therefore open to interpretation, giving them little utility in making such a determination." *Id.* Accordingly, the ALJ afforded little weight to these opinions.

Second, the ALJ found inconsistencies between Dr. Shukri's opinions and the objective medical evidence, which included his own treatment notes. The ALJ highlighted that Dr. Shukri had concluded

15

that Schillo's bilateral hand tremors "would make fine manipulation impossible," but "[t]he medical record shows [Schillo] generally has mild right-sided tremors and mild to moderate left-sided tremors, which does not suggest a total inability to engage in fine manipulation with either hand." App'x at 75–76. The ALJ further pointed to Schillo's own testimony establishing her ability to engage "in several activities that require fine manipulation, including driving a vehicle, dressing, bathing, preparing meals, doing chores, and using a cellphone." *Id.* at 76. In sum, because the ALJ found Dr. Shukri's opinions to be an "overstatement" of Schillo's manipulative limitations, the ALJ afforded his opinions partial weight and assigned limitations on Schillo's RFC that "are more commensurate with the objective evidence." *Id.*

The ALJ also gave partial weight to the opinions of Dr. Picciano. Most of Dr. Picciano's opinions of Schillo's RFC were submitted in February 2018 on a check-marked worksheet endorsing specific

16

limitations with almost no explanation. According to this worksheet, Schillo (1) experiences for over 30% of the workday symptoms severe enough to interfere with the attention and concentration needed to perform simple work tasks; (2) cannot walk more than one city block without experiencing pain or needing to rest; (3) can sit for only ten minutes before needing to get up; (4) can stand for no more than twenty minutes before needing to sit down; (5) cannot "sit and stand/walk" for more than two hours in an eight-hour workday (with normal breaks); (6) needs a job that permits shifting positions at will from sitting, standing, or walking; (7) needs ten-minute breaks each hour of an eight-hour workday; (8) can lift items weighing less than ten pounds only occasionally; (9) can use her right hand for gross manipulation for 20% of the workday and for fine manipulation for 10% of the workday, but can *never* use her left hand for gross or fine manipulation; and (10) on average will likely be absent from work for more than four days per month as a result of her impairments.

Admin. R. on Appeal at 407–09. That same month, Dr. Picciano opined that Schillo "is unable to work and has been unable to work since 5/2016 due to the effects of multiple neurological and musculoskeletal disorders." *Id.* at 410. The ALJ afforded some weight to Dr. Picciano's opinions because they "support[ed] some measure of exertional, postural, and manipulative limitations, which [were] consistent with the longitudinal record." App'x at 76. But, like Dr. Shukri's opinion, the ALJ found that the manipulative limitations suggested by Dr. Picciano did "not match up with the evidence showing mild tremor symptoms and sensory deficits in the right dominant hand and mild to moderate symptoms in the left." *Id.* Accordingly, because the ALJ found that Dr. Picciano's opinions deviated from the objective medical evidence, they were entitled to no more than partial weight. *Id.*

Finally, the ALJ gave little weight to the opinion of the consultative examiner, Dr. Ganesh, that Schillo's overall movements

18

were very brisk and that she had no physical difficulties. Dr. Ganesh's examination of Schillo had resulted in few abnormal findings. The ALJ concluded that this was inconsistent with the longitudinal evidence, which instead indicated "ongoing problems with hand tremors, neuropathic symptoms, and fibromyalgia, all of which contribute to functional limitations." *Id.* at 76–77. Although the ALJ found that the opinions of Schillo's treating physicians overstated Schillo's limitations in light of the objective evidence, the ALJ gave them more weight than the opinion of Dr. Ganesh because they were "more consistent with a preponderance of the evidence than [Dr. Ganesh's finding of] no limitations at all." *Id.*

## C. Review of the ALJ's decision

Schillo sought review of the ALJ's May 25, 2018, decision by the SSA's Appeals Council. The Appeals Council denied her request on January 15, 2019, making the ALJ's decision the final decision of the Commissioner**.** On August 12, 2019, Schillo filed a complaint in the

19

United States District Court for the Northern District of New York

seeking judicial review of the Commissioner's decision. The district

court issued a memorandum decision and order affirming the

Commissioner's denial of Schillo's application for Social Security

benefits on September 29, 2020, and entered judgment that same day.[2]

On November 20, 2020, Schillo filed this timely appeal.

## II.    Standard of review

Congress has authorized federal courts to engage in limited

review of final SSA disability benefit decisions. "On an appeal from

the denial of disability benefits, we focus on the administrative ruling

rather than the district court's opinion." *Estrella v. Berryhill*, 925 F.3d

90, 95 (2d Cir. 2019) (internal quotation marks omitted). That is

because the same standard of review applies to the agency's decision,

both in the district court and before a court of appeals: "The findings

of the Commissioner of Social Security as to any fact, if supported by

---

[2] On September 6, 2019, Schillo consented to the jurisdiction of a magistrate judge.

substantial evidence, shall be conclusive . . . ."  42 U.S.C. § 405(g).

"We conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied."  *Estrella*, 925 F.3d at 95 (internal quotation marks omitted).  The "substantial evidence" standard is "a very deferential standard of review—even more so than the 'clearly erroneous' standard*." Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012).  "Indeed, it is not our function to determine *de novo* whether a plaintiff is disabled."  *Id.* at 447 (alterations and internal quotation marks omitted).  "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted); *see also Brault*, 683 F.3d at 448.  "In determining whether the agency's findings were supported by substantial evidence, the reviewing court is required to examine the

entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Selian*, 708 F.3d at 417 (internal quotation marks omitted). "If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "The substantial evidence standard means once an ALJ finds facts, we can reject those facts 'only if a reasonable factfinder would *have to conclude otherwise*.'" *Brault*, 683 F.3d at 448 (emphasis added in *Brault*) (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)). We "require that the crucial factors in any determination be set forth with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." *Estrella*, 925 F.3d at 95 (alterations and internal quotation marks omitted).

## III.  Discussion

Schillo advances two related arguments, both of which turn on the treating physician rule. She contends first that the ALJ's RFC

determination was not supported by substantial evidence because what the ALJ articulated as "good reasons" for discounting the treating physicians' opinions were not, in fact, backed up by the record. Schillo's second argument is essentially procedural: that in spelling out "good reasons" for according less than controlling weight to the treating physicians' opinions, the ALJ failed to expressly walk through certain mandatory factors outlined in 20 C.F.R. § 404.1527.

As our precedents have held, when applying 20 C.F.R. § 404.1527, there are "specific procedures that an ALJ must follow in determining the appropriate weight to assign a treating physician's opinion. First, the ALJ must decide whether the opinion is entitled to controlling weight." *Estrella*, 925 F.3d at 95. The opinion of a claimant's treating physician as to the nature and severity of the impairment is given controlling weight so long as it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with (or contradicted by) other substantial

23

evidence in the claimant's case record. *See Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008); 20 C.F.R. § 404.1527(c)(2). "[T]he ALJ cannot arbitrarily substitute his own judgment for competent medical opinion," *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (internal quotation marks omitted); rather, the ALJ's assessment of the relevant opinion must always be supported by substantial evidence in the record. "Second, if the ALJ decides the opinion is not entitled to controlling weight, it must determine how much weight, if any, to give it." *Estrella*, 925 F.3d at 95. The governing regulations require an ALJ to explicitly consider certain nonexclusive factors when making this determination: "(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Id.* at 95–96 (alterations and internal quotation marks omitted) (summarizing 20 C.F.R. § 404.1527(c)). Even though this list of considerations is

24

established by regulation, we discussed them at length in *Burgess v. Astrue*, 537 F.3d at 129, and so they are sometimes referred to as the "*Burgess* factors."

At both steps, the regulations require the ALJ to give "good reasons"—i.e., reasons supported by substantial evidence in the record—for the weight she affords the treating source's medical opinion. *See Estrella*, 925 F.3d at 96; *see also* 20 C.F.R. § 404.1527(c)(2). Indeed, our Court did not hesitate to remand in our recent decision in *Colgan v. Kijakazi*, where the ALJ failed to provide good reasons at step one for discounting a treating physician's opinion. 22 F.4th 353, 360 (2d Cir. 2022). The ALJ there erroneously relied on a "one-time snapshot" of the claimant's mental health status to find that the physician's opinion was inconsistent with the objective medical evidence. *Id.* at 362.

If the ALJ proceeds to step two, she must *explicitly* apply the factors listed in § 404.1527; the failure to do so is procedural error and

25

subject to harmless error analysis. *Estrella*, 925 F.3d at 95–96; *Colgan*, F.4th at 359 n.3. A court can conclude that such an error is harmless if the ALJ has otherwise provided "good reasons" for its weight assignment. *See Estrella*, 925 F.3d at 96. For instance, our Court has upheld an ALJ's denial of disability benefits even where the ALJ's written opinion failed to assist our review on appeal and did not "generate much confidence in the result." *Halloran v. Barnhart*, 362 F.3d 28, 31–33 (2d Cir. 2004). In *Halloran*, it was "unclear on the face of the ALJ's opinion whether the ALJ considered (or even was aware of) the applicability of the treating physician rule," but the Court concluded, "[a]fter carefully considering the entire record and the ALJ's opinion," that the ALJ had applied the substance of the rule. *Id.* at 32. The ALJ explained that the treating physician's two key findings were conclusory given that he provided them on an "uninformative response to a multiple-choice question about [the claimant's] ability to sit," and that he "did not address the question of

whether [the claimant] could do the job if given several breaks or allowed to change position often." *Id.* (internal quotation marks omitted). The ALJ's explanation thereby struck the Court as an application of the substance of the treating physician rule. *See also Estrella*, 925 F.3d at 96 (where "'a searching review of the record' assures us 'that the substance of the treating physician rule was not traversed,' we will affirm" (quoting *Halloran*, 362 F.3d at 32)).

## A. The ALJ's RFC assessment was supported by substantial evidence

We turn first to Schillo's claim that the ALJ's assessment of the treating physicians' opinions, and ultimately of her RFC, was unsupported by substantial evidence. Here, at step one, the ALJ did not afford controlling weight to the opinions of Schillo's treating physicians.[3] We hold that the reasons the ALJ provided—that their

---

[3] Although the ALJ here did not expressly state that she would not afford "controlling" weight to the opinions of Schillo's treating physicians, that much is clear given that the ALJ ultimately concluded that Dr. Shukri's opinions would receive little and partial weight and that Dr. Picciano's opinions would receive partial weight.

opinions were conclusory, unhelpful with respect to assessing RFC, and inconsistent with the objective medical evidence—were "good reasons" supported by substantial evidence.

The ALJ reasonably determined that Dr. Shukri's conclusory opinion that Schillo was disabled was not entitled to controlling weight. Dr. Shukri's statement—standing alone—cannot be determinative of Schillo's disability status. *See Snell*, 177 F.3d at 133. And what accompanies Dr. Shukri's opinion are conclusory words as to how Schillo will "[m]aybe qualify" for disability benefits and that it might be "very difficult" for her to do any "physical job." Admin. R. on Appeal at 285. The ALJ was entitled to conclude that these statements were too vague to be of much help in a concrete assessment of Schillo's RFC, and that Dr. Shukri's opinion was therefore entitled to only limited weight.

Schillo contends that "the ALJ was duty bound to obtain a more detailed and clarified statement from Dr. Shukri before rejecting

statements due to 'vague, undefined terms.'" Appellant's Br. at 49.

We disagree. To be sure, a hearing on disability benefits is a non-adversarial proceeding. An ALJ generally has an affirmative duty to develop the administrative record, including when there are deficiencies in the record. *Burgess*, 168 F.3d at 79; *Rosa*, 168 F.3d at 79. But a deficiency in reasoning by a treating physician is not the same as a gap in treatment records. In other circumstances, we have concluded that an ALJ should have sought additional information to fill a record consisting only of sparse and conclusory notes of a single treating physician. *Rosa*, 168 F.3d at 79–80; *see also Pratts v. Chater*, 94 F.3d 34, 38 (2d Cir. 1996) (concluding that the record offered "no basis to find the substantial evidence necessary to uphold the ALJ's decision" given that much of the claimant's medical history was missing and that the medical records appearing in the record were frequently incomplete or illegible, providing "no coherent overview of [the claimant's] treatment"). Here, by contrast, there was a

complete record before the ALJ consisting of medical opinions, treatment notes, and test results from 2016 to 2018, as well as Schillo's own testimony. The ALJ pointed to specific portions of the record that undercut Dr. Shukri's opinion that Schillo had a total inability to manipulate both hands. Schillo has not identified any missing medical records that should have been included in the record, and we are aware of none. Accordingly, the ALJ did not err in failing to supplement the administrative record.

Similarly, the ALJ provided good reasons for not affording controlling weight to Dr. Picciano's check-box form medical opinion. As we recently made clear, there is no rule that "the evidentiary weight of a treating physician's medical opinion can be discounted by an ALJ based on the naked fact that it was provided in a check-box form." *Colgan*, 22 F.4th at 361. An ALJ may, however, discount a treating physician's opinion—regardless of its form—if it is not supported by substantial evidence in the record. For example, in

*Halloran*, the treating physician's medical report was "prepared on a standardized, multiple-choice 'New York State Office of Temporary and Disability Assistance' Form, which elicits information about the patient's ability to do work-related physical activities." *Halloran*, 362 F.3d at 31. "Among other designations," the treating physician checked a box stating that the claimant "could sit for 'less than 6 hours per day.'" *Id.* Because the treating physician's opinions "were not particularly informative and were not consistent with those of several other medical experts," we concluded that they were not entitled to controlling weight. *Id.* at 32. Conversely, we recently vacated an ALJ's decision not to afford controlling weight to a treating physician's check-box form opinion. *Colgan*, 22 F.4th at 362. As we explained in *Colgan*: "In contrast to the medical report at issue in *Halloran*—which *completely* lacked any supporting evidence in the medical record—[the treating physician's] check-box form opinion [here] was supported by voluminous treatment notes gathered over

the course of nearly three years of clinical treatment." *Id.* (emphasis

added).

On balance, Dr. Picciano's opinion is more akin to that of the

treating physician in *Halloran*: it deviates from the consistent 2016 to

2018 medical evidence showing only mild tremor symptoms and

sensory deficits in Schillo's right dominant hand and mild to

moderate symptoms in Schillo's left hand.[4]  The ALJ found notable

inconsistencies between Dr. Picciano's conclusions and the

longitudinal records of Schillo's physical health—parsing through

---

[4] Further, Schillo's testimony about her daily activities—including her ability to do chores around her house, bathe, dress, and use her cellphone—lends some support to the ALJ's findings that both Drs. Shukri's and Picciano's opinions are inconsistent with the objective medical evidence.  Of course, "[w]hen a disabled person gamely chooses to endure pain in order to pursue important goals, . . . it would be a shame to hold [that] endurance against him in determining benefits *unless his conduct truly showed that he is capable of working*."  *Colgan*, 22 F.4th at 363 (emphasis added) (internal quotation marks omitted).  Schillo did not testify that she persevered through tremors or pain when completing all activities.  For instance, she reported no difficulty with fine or gross hand or finger manipulation when doing her laundry, cleaning her home, or doing the dishes.  Regardless of whether this testimony standing alone could have been sufficient to accord lesser weight to the treating physicians' opinions, it bolsters what the ALJ found after a thorough review of the record: that during the relevant period, Schillo did not have a total inability to use her hands such that it would have precluded her from performing her past relevant work.

each data point and thus not resting the disability determination on an unrepresentative "one-time snapshot" of Schillo's status. *See, e.g.*, *Colgan*, 22 F.4th at 362; *Estrella*, 925 F.3d at 97–98. In short, substantial evidence supported the ALJ's decision to afford only limited weight to the opinion of Dr. Picciano.[5] We therefore cannot second-guess that decision on appeal. *See Brault*, 683 F.3d at 448.

Having concluded that the ALJ's assignment of lesser weight to Drs. Shukri's and Picciano's medical opinions was permissible, we also hold that substantial evidence supports the ALJ's ultimate RFC determination. As the ALJ accorded the treating physicians' opinions

---

[5] We note that the ALJ gave even less weight to the opinion of the consultative examiner, compared to the opinions of Drs. Shukri and Picciano. *See* App'x at 77 ("I gave more weight to the opinions of the claimant's treating physicians who, although they overstated the claimant's limitations in light of the objective evidence, were more consistent with a preponderance of the evidence than no limitations at all."). "[W]e have frequently cautioned that ALJs should not rely heavily on the findings of consultative physicians after a single examination," and so it can be problematic when an ALJ affords them more weight than a treating physician's findings. *Colgan*, 22 F.4th at 363 (internal quotation marks omitted); *see also Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990). That is not an issue here, where the ALJ engaged in a careful comparative assessment of the various medical opinions in the record and accorded relatively more (though ultimately non-determinative) weight to the opinions of the treating physicians.

*lesser* and not *no* weight, she still considered their conclusions to assess Schillo's RFC. The ALJ also looked to the other sources in the administrative record, including MRI results, x-ray results, and notes documenting Schillo's visits with other medical providers. Using these opinions and data points, the ALJ laid out with specificity Schillo's physical capabilities. *See supra* pps. 13–14; *see also Estrella*, 925 F.3d at 95. Under our very deferential standard of review, *see Brault*, 683 F.3d at 448, we cannot say that no reasonable factfinder could have reached the same conclusion—that an assessment of Schillo's RFC showed that she could perform her past relevant work as a project manager.

In reaching this conclusion, we also reject Schillo's argument that, having declined to afford controlling weight to any of the three physicians' opinions, the ALJ was thereby prohibited from making an RFC finding whatsoever. The ALJ is permitted to discount the opinion of a treating physician if it is inconsistent with other

34

substantial evidence. *See Halloran*, 362 F.3d at 32. And the ALJ bears "the final responsibility" for making RFC determinations. 20 C.F.R. § 404.1527(d)(2). It follows from these basic principles that the ALJ's RFC conclusion need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence. *See Richardson*, 402 U.S. at 399 ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict."). In so holding, we here reiterate a point that this Court has previously made summarily. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (stating that an ALJ's conclusions need not "perfectly correspond with any of the opinions of medical sources cited in his decision" because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole").

## B. The ALJ's procedural error was harmless

Next, we consider Schillo's claim that the ALJ committed an

error of law by failing to follow the correct procedures when applying the treating physician rule. Once the ALJ decided not to afford controlling weight to the treating physicians' opinions, she was required to explicitly review the factors listed in 20 C.F.R. § 404.1527(c) to determine what (if any) lesser weight to give those opinions. *See Burgess*, 537 F.3d at 129. As the agency concedes, the ALJ failed to consider each factor explicitly and thereby committed a procedural error.

But this is not the end of the road. Our examination of the record discloses that the ALJ nevertheless applied the substance of the treating physician rule. The ALJ's written decision effectively covered the factors listed in 20 C.F.R. § 404.1527(c)(2), including the nature of the examining and treating relationships, the supportability of the opinions, their consistency with the record as a whole, and the doctors' specialization. With respect to Dr. Shukri's background and proffered medical opinions, the ALJ explained that Dr. Shukri treated

Schillo from May 2016 into 2017; that Dr. Shukri's opinion that Schillo's bilateral hand tremors would make fine manipulation impossible was inconsistent with the objective findings and Schillo's reported activities; and that Dr. Shukri, as a neurologist, is a specialist. As to Dr. Picciano, the ALJ similarly explained that Dr. Picciano treated Schillo between 2016 and 2018; that Dr. Picciano's opinion with respect to Schillo's hand and finger manipulation deviated significantly from the objective evidence; and that Dr. Picciano is not a specialist.[6] Furthermore, in assessing Schillo's RFC, the ALJ articulated that although the body of medical evidence in the record supports the treating physicians' opinions to the extent they concluded that Schillo had some physical limitations (which is why the ALJ still afforded some weight to their opinions), that evidence did not suggest that those limitations were so complete as to render

_____

[6] We glean this from the fact that the ALJ specified Dr. Shukri's specialty—neurology—and omitted a specialty in her discussion of Dr. Picciano's opinions. Further, the record makes clear that Dr. Picciano is Schillo's primary care physician, not a specialist. *See, e.g.*, Admin. R. on Appeal at 301, 424.

her disabled. For instance, the ALJ detailed how "[d]uring a detailed neurological examination, the claimant demonstrated no resting tremors, but she had mild to moderate low-amplitude action hand tremors that were worse on the left, with minimal to mild impairment in drawing and writing." App'x at 74; *see, e.g.*, *id.* (summarizing results from Schillo's examinations in 2017, including that Schillo presented no tremors or involuntary movements and a normal gait despite limited range of cervical motion bilaterally and that she was doing notably well on her medication).

Accordingly, although the ALJ should have proceeded more methodically through the factors enumerated in § 404.1527(c)(2), it is evident that she "applied the substance of the treating physician rule." *Halloran*, 362 F.3d at 32. The ALJ articulated "good reasons" for assigning little weight and partial weight to Dr. Shukri's opinions and partial weight to Dr. Picciano's opinions: their opinions were conclusory, inconsistent with the objective medical evidence, and

38

unhelpful in assessing Schillo's RFC. The procedural error was therefore harmless. *See Estrella*, 925 F.3d at 96.

We have considered Schillo's remaining arguments and conclude that they lack merit.

## IV. Conclusion

To summarize, we hold as follows:

1. Substantial evidence in the record supports (a) the ALJ's assignment of less than controlling weight to the opinions of Schillo's treating physicians about the nature and severity of her impairments pursuant to 20 C.F.R. § 404.1527, and (b) the ALJ's finding that Schillo retained the residual functional capacity to perform her previous work as a project manager.

2. The ALJ committed procedural error by failing to explicitly apply each of the factors listed in 20 C.F.R. § 404.1527(c) when determining what weight to assign the opinions of Schillo's treating physicians. But that error was

harmless because the record establishes that the ALJ nevertheless applied the substance of the treating physician rule.

For the foregoing reasons, we **AFFIRM** the judgment of the district court affirming the Commissioner's denial of Schillo's application for Social Security Disability Insurance and Supplemental Security Income benefits.