*Adams v. O'Malley*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 26th day of June, two thousand twenty-four.

PRESENT:
> **GERARD E. LYNCH,**
> **SUSAN L. CARNEY,**
> **MICHAEL H. PARK,**
> *Circuit Judges.*

---

**Theodore James Adams, Jr.,**

> *Plaintiff-Appellant*,

> v.                                                                 **23-1066**

**Martin O'Malley, Commissioner of Social Security,**

> *Defendant-Appellee*.

---

| | |
|---|---|
| **FOR APPELLANT:** | ALAN L. BUSHLOW, Abbott Bushlow & Schechner, LLP, Ridgewood, NY. |
| **FOR APPELLEE:** | ANNE M. ZEIGLER, Special Assistant United States Attorney (Charles Kawas, Acting Associate General Counsel, Social Security Administration, *on the brief*), *for* Breon Peace, United States Attorney for the Eastern District of New York, Brooklyn, NY. |

Appeal from a judgment of the United States District Court for the Eastern District of New York (Kovner, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Theodore Adams, Jr., applied for disability insurance benefits based on his diagnoses of depression with psychotic features, anxiety, ADHD, PTSD, and arthritis of the cervical spine. After his application was denied by the Social Security Administration, Adams requested a hearing before an administrative law judge (ALJ). The ALJ denied Adams's application, concluding that he was not disabled under sections 216(i) and 223(d) of the Social Security Act. After the Social Security Administration's Appeals Council denied review of the ALJ's decision, Adams appealed to the district court. Adams and Defendant-Appellee Commissioner both moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). The district court denied Adams's motion and granted the Commissioner's cross-motion, concluding that the ALJ gave the treating physician's opinion proper weight, the ALJ's decision that Adams was not disabled was supported by substantial evidence, and the ALJ's hypothetical questions to the vocational expert did not lack proper foundation. Adams appealed. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

The Social Security Act sets forth benefits available to claimants who are "disabled." 42 U.S.C. § 423 *et seq*. Under 42 U.S.C. § 423(d)(1)(A), "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." The Commissioner of Social Security follows a five-step process to determine whether a claimant is "disabled" under the Social Security Act, and "[i]f at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Schillo v. Kijakazi*, 31 F.4th 64, 70 (2d Cir. 2022) (internal quotation marks omitted). Under the five-step process, the Commissioner determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe physical or mental impairment, or combination of severe impairments; (3) whether the impairment (or combination) meets or equals the severity of one of the impairments specified in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments"); (4) whether, based on an assessment of the claimant's residual functional capacity, the claimant can perform any of [his] past relevant work; and (5) whether the claimant can make an adjustment to other work given the claimant's residual functional capacity, age, education, and work experience.

*Id*. (citing 20 C.F.R. § 404.1520(a)(4)(i)-(v)). The burden of proof lies with the claimant for the first four steps, then shifts to the Commissioner "to a limited extent" for the fifth step. *Id*.

This Court "engage[s] in limited review of final SSA disability benefit decisions." *Id*. at 74. "[W]e focus on the administrative ruling rather than the district court's opinion." *Id*. (internal quotation marks omitted). "We may vacate the agency's disability determination only if it is based on legal error or unsupported by 'substantial evidence'—that is, if no reasonable factfinder could have reached the same conclusion as the ALJ." *Id*. at 69. The "substantial evidence" standard is "a very deferential standard of review—even more so than the 'clearly erroneous' standard," meaning "once an ALJ finds facts, we can reject those facts 'only if a reasonable factfinder would *have to conclude otherwise*.'" *Id*. at 74 (quoting *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012)).

3

## I. Treating Physician Rule

The ALJ properly declined to give controlling weight to the opinion of the treating physician, Dr. Valentine. For Adams's claim, which was filed before March 27, 2017, "the ALJ's decision must account for the 'treating physician rule.'" *Schillo*, 31 F.4th at 69. "First, the ALJ must decide whether the opinion is entitled to controlling weight. The opinion of a claimant's treating physician as to the nature and severity of the impairment is given controlling weight so long as it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with (or contradicted by) other substantial evidence in the claimant's case record." *Id*. at 75 (cleaned up). "Second, if the ALJ decides the opinion is not entitled to controlling weight, it must determine how much weight, if any, to give it." *Id*. (internal quotation marks omitted). The ALJ must "always give good reasons" for the weight given by explicitly considering nonexclusive factors, 20 C.F.R. § 404.1527(c)(2), referred to as the *Burgess* factors: "(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Schillo*, 31 F.4th at 69 (internal quotation marks omitted); *see Burgess v. Astrue*, 537 F.3d 117 (2d Cir. 2008). "An ALJ's failure to 'explicitly' apply the *Burgess* factors when assigning weight at step two is a procedural error." *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019). "If, however, a searching review of the record assures us that the substance of the treating physician rule was not traversed, we will affirm." *Id*. (internal quotation marks omitted).

Although the ALJ did not explicitly apply each *Burgess* factor, she articulated good reasons for assigning "some weight" to Dr. Valentine's opinion. First, the ALJ considered the frequency,

4

length, nature, and extent of treatment by acknowledging that Dr. Valentine was Adams's treating physician and generally saw Adams for about thirty minutes every few months with a gap in treatment in 2017. The ALJ then explained the weight she assigned. In particular, she reasoned that Dr. Valentine's opinion—that Adams "had largely marked limitations in areas including maintaining a normal schedule, maintaining attention and concentration, getting along with others, accepting criticism, and being able to complete a normal workday or work week with additional rest breaks"—was "not accompanied with any rationale or a clinical narrative" and was "inconsistent with the largely normal objective findings on Dr. Valentine's examinations, as well as [Adams's] mostly normal consultative examination." ROA at 25.

These inconsistencies are supported by the record. For example, Dr. Valentine reported that Adams was markedly impaired in his "ability to maintain attention and concentration for extended periods," *id*. at 441, but recorded on several examinations that Adams generally had good concentration especially when he was consistent in taking his medication. Additionally, while Dr. Valentine reported that Adams was markedly impaired in his "ability to understand and remember" and "carry out detailed instructions," *id*., both Dr. Porcelli and Dr. Kleinerman reported that Adams was not significantly limited in that respect. Similarly, while Dr. Valentine reported that Adams was markedly impaired in his abilities to complete a normal workday and workweek without additional rest periods, to set realistic goals, or to make plans independently of others, Dr. Kleinerman opined that those abilities were not significantly limited.

Moreover, we have held that "a treating physician's medical opinion is not entitled to controlling weight where it is provided in a check-box form and is unaccompanied by meaningful medical evidence in the administrative record." *Colgan v. Kijakazi*, 22 F.4th 353, 361 (2d Cir.

5

2022). The ALJ did not err in discounting Dr. Valentine's opinion, submitted in check-box form, because it was unaccompanied by any rationale and was generally inconsistent with Dr. Valentine's own findings and those of the other physicians. *See Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("When other substantial evidence in the record conflicts with the treating physician's opinion, . . . that opinion will not be deemed controlling. And the less consistent that opinion is with the record as a whole, the less weight it will be given.").

Finally, Adams argues that the ALJ should not have given Dr. Kleinerman's opinion "some weight," but Adams forfeited this argument by failing to raise it previously. In any event, the ALJ's decision was proper. Dr. Kleinerman reviewed Dr. Valentine's treatment records and Dr. Porcelli's exam report and gave an opinion consistent with the available evidence. The ALJ recognized that to the extent "Dr. Kleinerman did not provide any specific functional limitations," and based on additional evidence of greater interpersonal restrictions on Adams, his report was afforded some weight. ROA at 24. Notably, Dr. Kleinerman's opinion was not the only source of evidence that undermined Dr. Valentine's opinion—Dr. Porcelli's report and the largely normal mental status findings in Dr. Valentine's treatment notes also provided substantial support.

The ALJ thus provided a detailed explanation for her decision, and the decision was supported by substantial evidence.

## II. Substantial Evidence

### A. ALJ's Findings of Adams's Impairments and Limitations

Adams argues that the ALJ erred in concluding that his impairments do not meet or equal listing 12.04 (depressive, bipolar, and related disorders) or 12.06 (anxiety and obsessive-compulsive disorders) of 20 C.F.R. Part 404, Subpart P, Appendix 1. To meet listings 12.04 or

6

12.06, Adams's impairments must satisfy the criteria in either (i) paragraphs A and B, *or* (ii) paragraph C of those listings. To satisfy the paragraph B criteria, the mental impairments must result in extreme limitation of one or marked limitations of two of the following areas of mental functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves. *See* 20 C.F.R. Part 404, Subpart P, App'x 1 §§ 12.04(B), 12.06(B). A limitation is "extreme" if one cannot function "independently, appropriately, effectively, and on a sustained basis." *Id*. § 12.00(F)(2)(e). A limitation is "marked" if "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." *Id*. § 12.00(F)(2)(d). To satisfy the paragraph C criteria, Adams must show that his mental disorder is "serious and persistent" by evidence of both: "medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of [his] mental disorder"; and minimal capacity to adapt to environmental changes or demands not already part of daily life. *Id*. §§ 12.04(C), 12.06(C).

The ALJ's finding that Adams did not satisfy the paragraph B or C criteria was based on substantial evidence. As to the paragraph B criteria, Dr. Valentine's own findings do not satisfy those criteria, as he found only marked limitations in one category and found no extreme limitations. In any event, first, Adams has demonstrated his ability to understand, remember, and apply information through Dr. Valentine's reports of Adams's grossly normal cognitive functioning and memory, and Dr. Porcelli's report of his intact memory skills and average cognitive functioning. Second, Adams has demonstrated his ability to interact with others through Dr. Valentine's reports of Adams's generally cooperative behavior and good insight and

judgment; his reports of Adams enjoying social interactions with his friends and addiction recovery group; and Dr. Porcelli's report of Adams's "manner of relating, social skills, and overall presentation" as adequate, ROA at 368. Third, Adams has demonstrated his ability to concentrate, persist, or maintain pace through Dr. Valentine's reports of Adams's good concentration; his reports of Adams's efforts toward exam preparations, job searching, and taking care of his mother's financial and personal matters; and Dr. Porcelli's conclusion of Adams's "coherent and goal directed" thought processes and intact attention and concentration, *id*. at 368-69. Finally, Adams has demonstrated his ability to adapt and manage himself. Even when he lost his job and his mother's health was deteriorating, Adams was able to continue taking care of himself, his sick mother, and stepfather; cook, clean, and manage his mother's residual matters; and continue studying for his exam and conducting job interviews.

Similarly, the ALJ properly concluded that the paragraph C criteria were satisfied. The fact that Adams was able "to tend to personal care, drive, and prepare meals, and [] care[] for his mother, who had dementia," *id*. at 20, and that at several examinations, Dr. Valentine generally described Adams as stable or doing well without making significant adjustments to his medication, do not establish Adams's impairment as "serious and persistent."

Substantial evidence thus supports the ALJ's conclusion that Adams's impairments do not meet or equal listings 12.04 or 12.06 of 20 C.F.R. Part 404, Subpart P, Appendix 1.

B.    ALJ's Hypothetical Questions to the Vocational Expert

Adams argues that the foundation of a hypothetical question posed by the ALJ to a vocational expert was not supported by substantial evidence. To help determine if Adams could perform other work existing in the national economy, "[a]n ALJ may rely on a vocational expert's

testimony regarding a hypothetical as long as there is substantial record evidence to support the assumptions upon which the vocational expert based his opinion and accurately reflect the limitations and capabilities of the claimant involved." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) (cleaned up).

Here, the ALJ asked the vocational expert to consider a hypothetical person with Adams's vocational profile who could "perform simple, routine, repetitive work in an environment with few, if any, workplace changes, and [could] occasionally interact with supervisors, coworkers and the public." ROA at 87. The expert testified that the hypothetical person could not perform any of his past work, but could perform light, unskilled work—*e.g.*, as a housekeeper, mailroom clerk, office helper, and merchandise marker. The ALJ also asked the expert to consider additional limitations—namely, the inability to provide direct customer service or perform work that involved teamwork—and the expert confirmed that such a person could still perform the unskilled jobs discussed. The ALJ then found that based on the expert's testimony, and Adams's "age, education, work experience, and residual functional capacity," Adams was "capable of making a successful adjustment to other work." *Id*. at 27.

We conclude that substantial evidence supports the assumptions on which the vocational expert based her opinion. As to Adams's ability to "perform simple, routine, repetitive work in an environment with few, if any, workplace changes," medical records show that Adams was able to care for his mother and stepfather, cook, and clean. Dr. Valentine's reports show that Adams had grossly normal cognitive functioning and a logical and coherent thought process. And the consultative physicians reported that Adams could carry out short and simple instructions and that his ability to carry out detailed instructions was not significantly limited. As to Adams's ability

9

to "occasionally interact with supervisors, coworkers and the public," Adams reported to Dr. Valentine that he was able to enjoy some social activities with friends and go to addiction recovery meetings regularly. The consultative physicians also reported that Adams was "[m]oderately limited" in his ability to interact and work with others. *Id*. at 99, 370. The hypothetical questions posed by the ALJ were thus appropriate.

We have considered Adams's remaining arguments and find them to be without merit. For the foregoing reasons, the judgment of the district court granting the Commissioner's motion for judgment on the pleadings is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

10