24-2163-cv
*Anthony v. Saul*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 8th day of October, two thousand twenty-five.

Present:
> GERARD E. LYNCH,
> EUNICE C. LEE,
> ALISON J. NATHAN,
>
> *Circuit Judges.*

---

SUNITA FAITH ANTHONY,

> *Plaintiff-Appellant*,

v.                                                                     24-2163-cv

ANDREW SAUL, COMMISSIONER OF SOCIAL SECURITY,

> *Defendant-Appellee.*

---

FOR PLAINTIFF-APPELLANT:            ALAN L. BUSHLOW, Abbot Bushlow & Schechner, LLP, Ridgewood, NY.

FOR DEFENDANT-APPELLEE:            GEOFFREY M. PETERS, Special Assistant United States Attorney (Suzzane M. Haynes, Acting Associate General Counsel, Social Security Administration, *on the brief*), Baltimore, MD, *for* Joseph Nocella, Jr., United

States Attorney for the Eastern District of New York, New York, NY.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Kovner, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Sunita Anthony appeals the denial of her claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA"), 42 U.S.C. § 401, *et seq.* Anthony applied for benefits for depression, anxiety, paranoia, sleep deprivation, and an eating disorder. Though her DIB application indicated that she had filed or intended to file a Supplemental Security Income ("SSI") application, she never submitted such an application, and the Administrative Law Judge ("ALJ") assigned to her case considered only whether she was eligible for DIB. He concluded that Anthony was not disabled within the meaning of the statute and therefore was not entitled to DIB. Anthony appealed the denial of benefits to the district court, which affirmed the agency.

On appeal to this Court, Anthony argues that the ALJ erroneously (1) declined consideration of her SSI claim, (2) determined that her impairments were not disabling within the meaning of the relevant regulations during the time she was insured, and (3) rejected her request to evaluate her DIB as of an earlier date. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

"On an appeal from the denial of disability benefits, we focus on the administrative ruling rather than the district court's opinion." *Schillo v. Kijakazi*, 31 F.4th 64, 74 (2d Cir. 2022) (internal quotation marks omitted). "We conduct a plenary review of the administrative record

2

to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Id.* (internal quotation marks omitted); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). "The substantial evidence standard is a very deferential standard of review—even more so than the clearly erroneous standard." *Schillo*, 31 F.4th at 74 (internal quotation marks omitted). Under the substantial evidence standard, "once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks omitted).

## I.  The ALJ Did Not Err by Not Considering Anthony's SSI Claim

Anthony first argues that the ALJ erroneously rejected her counsel's request to either treat her DIB application as a concurrent claim for both SSI and DIB benefits or adjourn the DIB hearing to permit her to file the SSI application. Specifically, Anthony argues that, in light of her DIB application indicating that she had "filed or intend[ed] to file for SSI," the ALJ should have considered her eligibility for SSI. We disagree.

The ALJ did not err by refusing to consider an SSI claim for which no application had been filed. *See* 20 C.F.R. § 416.305(a) (stating that an individual "must file an application to become eligible to receive benefits"). Without an application, the agency cannot "make a formal determination whether or not [an individual is] eligible to receive benefits." *Id.* § 416.305(a)(1); *see also Mathews v. Eldridge*, 424 U.S. 319, 328 (1976) (explaining that a claim for benefits must be properly presented to the ALJ or "there can be no 'decision' of any type"). While there are some exceptions to this general rule, *see* 20 C.F.R. § 416.305(b), Anthony does not argue that any

3

of those exceptions apply here.   Nor do we see how she could.   Thus, the ALJ did not err by refusing to consider whether Anthony was eligible for SSI.[1]

Moreover, the ALJ did not abuse his discretion by declining to adjourn Anthony's DIB hearing so that she could file an SSI application.   After all, as the agency explains in its brief, at the time that Anthony requested the ALJ adjourn the hearing so that she could file an SSI application, she had already been represented by counsel for over a year on her DIB claim, and her counsel was aware that she had not filed an SSI application.   Under those circumstances, it was reasonable for the ALJ to refuse to adjourn the DIB hearing.   And as he explained at the hearing, the ALJ's decision not to adjourn Anthony's DIB hearing did not preclude Anthony from filing a separate SSI application.

## II.     Substantial Evidence Supports the Denial of Disability Benefits

Anthony further argues that the ALJ incorrectly determined that she was not disabled within the meaning of the statute between September 15, 2015, and December 31, 2015—that is, between the alleged onset of her disability and the date she was last insured.   In particular, Anthony contends that the ALJ erred in concluding that she did not qualify as disabled due to her depression, anxiety, and/or weight loss; that he failed to accord controlling weight to the medical opinions of her treating provider; and that he improperly considered the vocational witness's testimony.

First, substantial evidence supports the ALJ's finding that Anthony was not so severely impaired by her depression, anxiety, and weight loss to qualify as disabled between September 15

---

[1] Relatedly, no SSI claim is properly before this Court for review because Anthony never filed one.   *See* 42 U.S.C. § 405 (g) (explaining that an applicant may obtain judicial review only after the "final decision of the Commissioner of Social Security" on a claim).

4

and December 31, 2015. With respect to Anthony's weight loss claim, the ALJ found that Anthony's weight loss was non-severe. This conclusion is supported by the record given that the only weight loss evidence in the record post-dates the relevant time period. *See Vilardi v. Astrue*, 447 F. App'x 271, 272 (2d Cir. 2012) (holding that evidence demonstrating a worsening condition after the date last insured "is of little value").

With respect to her depression and anxiety, the ALJ found that Anthony did not have the requisite degree of functional limitation to qualify as disabled. Specifically, to demonstrate impairment on account of depression or anxiety, Anthony had to establish certain diagnostic criteria as well as either a prescribed degree of functional limitation or a "serious and persistent" mental disorder. 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.05–06. To show the necessary degree of functional limitation, Anthony had to demonstrate that she had one "extreme limitation" or two "marked limitations" in a broad area of functioning. *Id.* In this case, however, the ALJ found that found that Anthony had no more than moderate limitation in any area of functioning and that she did not have a serious and persistent mental health condition during the relevant period.

These findings are well supported in the record. For example, Anthony self-reported that she lived alone and prepared her own meals daily. In addition, her mental health treatment notes indicated that she had goal-directed, logical thought processes, that she could concentrate, that her judgment and memory were unimpaired, and that she had average intellectual functioning. Moreover, Anthony's mental health treatment between September 2015 and December 2015 was limited to 15-minute medication management sessions and weekly therapy sessions, and her symptoms were largely stable during this period. Taken together, these data points support the

5

ALJ's finding that Anthony was not more than moderately impaired due to her anxiety or depression during the relevant time. In arguing to the contrary, Anthony relies on a medical provider's 2018 opinion, but that report does not indicate that it is retroactive to the relevant time period and thus is unpersuasive. *See Vilardi*, 447 F. App'x at 272.

Further, the ALJ correctly declined to accord controlling weight to Anthony's treating provider's opinion under the treating physician rule. Anthony's treating provider for her mental health conditions, Nurse Leonzon, was a nurse practitioner. Nurse practitioners' opinions do not merit controlling weight under the treating physician rule. *See Monette v. Colvin*, 654 F. App'x 516, 518 (2d Cir. 2016) (quoting 20 C.F.R. § 404.1513(a), (d)(1)) ("[A] nurse practitioner is not an 'acceptable medical source' whose opinion is eligible for 'controlling weight.'"). Thus, we see no error here.[2]

Finally, Anthony argues that the ALJ erred by asking the vocational expert to assume that the hypothetical claimant could perform low-stress jobs with simple, routine, and repetitive tasks that would involve only limited decision making and occasional contact with others. First, Anthony argues that the ALJ's questions to the vocational expert did not reflect the full extent of her capabilities and impairments, as is necessary to provide a proper basis for the expert's

---

[2] Anthony also argues that Nurse Leonzon's opinion should be accorded controlling weight because her supervising psychiatrist endorsed her opinion in a submission to the agency's Appeals Council after the ALJ's initial denial of Anthony's DIB application. But as the Appeals Council correctly explained, the mere affixation of a psychiatrist's signature to Nurse Leonzon's opinion, by someone who—like Nurse Leonzon—did not treat Anthony until well after the relevant period, did not, without more, create a reasonable probability of a different outcome. This is especially so given that the ALJ *did* accord some weight—though not controlling weight—to Nurse Leonzon's conclusions.

testimony. Second, she argues that Social Security Ruling 85-15 specifically bars the type of hypothetical posed here. Both of these arguments fail.

As an initial matter, "[an ALJ] must determine [whether a] significant number[] of jobs exist in the national economy that the claimant can perform," including "by adducing testimony of a vocational expert." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014). In doing so, an ALJ may rely on vocational expert testimony in response to a hypothetical question as long as "there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion." *Id*. Here, the ALJ's hypothetical question regarding Anthony's ability to work in a low-stress environment was based on the ALJ's individualized assessment of Anthony's abilities, and was not prohibited by any agency ruling. Contrary to Anthony's argument, Social Security Ruling 85-15 merely provides that "[t]he reaction to the demands of work (stress) is highly individualized" and clarifies that the requisite skill level is not necessarily dispositive of the difficulties an individual may face on the job. SSR 85-15, 1985 WL 56857, at *6 (Jan. 1, 1985). Thus, this ruling does not indicate that the ALJ's hypothetical was improper. *See McIntyre*, 758 F.3d at 152. Moreover, to the extent that the ALJ's hypothetical was not aligned with the medical opinions that Anthony provided, as she argues in her brief, those medical opinions post-date the relevant time period and therefore do not control.

### III. The ALJ Did Not Err by Refusing to Evaluate the DIB Claim with an Earlier Onset Date

Anthony further argues that the ALJ erroneously denied her application to amend the alleged onset date of her disability to February 22, 2014, which is the date she began regular psychiatric treatment. Anthony does not prevail on this argument either. The Social Security

Ruling she cites, Ruling 18-01p, explains that the agency will determine a claimant's established onset date if it "find[s] that a claimant meets the statutory definition of disability and meets the applicable non-medical requirements during the period covered by his or her application." SSR 18-01p, 2018 WL 4945639, at *2 (Oct. 2, 2018). Where, as here, the agency determined that the claimant did not meet the statutory definition of a disability during the time period alleged on her application, the ALJ was not required to accept the claimant's request for an amended onset date. *See* 20 C.F.R. § 404.946(b)(1) (providing that an ALJ "*may* consider a new issue at the hearing" (emphasis added)); *see also Cyree v. Kijakazi*, No. 22-35462, 2023 WL 3862512, at *1 (9th Cir. June 7, 2023) ("SSR 18-1p does not apply because an established onset date must be determined only if the ALJ finds that the claimant met the statutory definition of disability.").

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

8